# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DARREN W.[1]**, | Case No. 6:19-cv-1008-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Brent Wells and Katherine L. Eitenmiller, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Joseph J. Langkamer, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Darren W. brings this action pursuant to § 205(g) of the Social Security Act (the

Act), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Act. For the following reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

In February 2016, Plaintiff applied for SSI, alleging disability beginning January 1, 2011. AR 131-39. Plaintiff was born on July 26,1979, making him 31 years old as of the disability onset date. AR 22. The agency denied the claim both initially and upon reconsideration. AR 97-105. Plaintiff appealed and testified at a hearing held before an Administrative Law Judge (ALJ). In a decision dated July 3, 2018, the ALJ found that Plaintiff was not disabled. AR 10-28. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review in April 2019. AR 1-6. Accordingly, the ALJ's decision became the final decision of the Commissioner. AR 1.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since the relevant period began. AR 15. At step two, the ALJ found

that Plaintiff has the severe impairments of lumbar spine degenerative disc disease, borderline

intellectual functioning (BIF), social anxiety disorder, persistent depressive disorder,

agoraphobia, bipolar disorder, and posttraumatic stress disorder (PTSD). *Id.* At step three, the

ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform

> medium work as defined in 20 CFR 416.967(c) with the following
> additional limitations: the claimant can lift/carry 50 pounds
> occasionally and 25 pounds frequently. He can stand/walk for six
> hours in an eight hour workday and sit for six hours in an eight
> hour workday. He can stoop, kneel, crouch, and crawl on a no
> more than frequent basis. The claimant is limited to understanding
> and carrying out simple instructions in a work environment with
> few workplace changes. He is limited to isolated work with no
> public contact and only incidental co-worker contact, limited to no
> more than occasional supervisor contact, generally limited to

checking in with the individual at the beginning of each shift to
give work assignment and/or answer questions.

AR 18. Based on these limitations, at step four, the ALJ found that Plaintiff could not perform

any of his past relevant work. AR 22. At step five, the ALJ found that, considering Plaintiff's

age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant

numbers in the national economy, including machine packager, hand packager, and production

assembler. AR 23. The ALJ thus concluded that Plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred in three separate respects. First, Plaintiff argues that

the ALJ improperly rejected the "other" medical source statements of Wendy Hitt, PT, DPT;

Andrew Buck, QMHP; and Usha Davis, MSW, QMHP. Second, Plaintiff argues that the ALJ

improperly rejected Plaintiff's subjective symptom testimony. Third, Plaintiff argues that the

ALJ erred in rejecting the statements of a lay witness.

Plaintiff also requests that the Court credit as true the allegedly improperly discounted

testimony and remand for an immediate award of benefits. Had the ALJ credited the other

medical source statements, Plaintiff's subjective symptom testimony, and the lay witness'

statements, Plaintiff argues, the ALJ would have concluded at step five that Plaintiff was unable

to sustain performance and social functioning within the customary tolerances of competitive

work. The Court addresses each argument in turn.

## A.  Statements of "Other" Medical Sources

The ALJ afforded "[s]ome weight" to the opinion of Usha Davis, a social worker who

treated Plaintiff for his mental health, because "the record supports limitations change, social

interaction, and concentration due to the claimant['s] severe mental health impairments." AR 22.

The ALJ apparently did not accept Davis's opinion that "[Plaintiff's] mental health symptoms

result in severe impairments in work roles functions," however, because "Ms. Davis does not define what a 'severe impairment in work role functions' means in terms of functional limitations." *Id.* The ALJ did not mention the opinions of two additional other medical sources, Dr. Wendy Hitt, Plaintiff's physical therapist, and Andrew Buck, Plaintiff's therapist.

### 1.  Standards

Social Security Rule (SSR) 06-03p[2] in effect when Plaintiff filed his claim defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p, *available at* 2006 WL at 2329939 (Aug. 9, 2006). Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06-03p.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r*

---

[2] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR-06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

*of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not

"discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the

ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to

those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also

may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639,

642 (9th Cir. 1982).

### 2.  Medical Opinion of Usha Davis

Usha Davis is a social worker who treated Plaintiff for his mental health. Thus, she is an

"other" medical source. 20 C.F.R. § 416.902. Ms. Davis began treating Plaintiff in October 2016.

Her letter states that Plaintiff has "disorganized thinking [that] increases his irritable mood and

agitation," "mood disturbances" that "affect his ability to interact with the public, without

becoming hyperaroused and experiencing an increase in irritability," and "distractibility [that]

compr[o]mises his ability to work in coordination with others." AR 458. Ms. Davis concluded

that Plaintiff's "mental health symptoms result in severe impairment in work role functions," and

that Plaintiff cannot "maintain gainful employment." *Id.*

The ALJ afforded "[s]ome weight" to Ms. Davis's opinion because "the record supports

limitations change, social interaction, and concentration due to [Plaintiff's] severe mental health

impairments." AR 22. The ALJ appears to have given less or no weight, however, to Ms. Davis's

opinion that Plaintiff had "severe impairment in work role function" because Ms. Davis did not

define that impairment "in terms of functional limitations." *Id.*

The ALJ properly considered Ms. Davis's opinion. Because Ms. Davis treated Plaintiff

for more than a year, the ALJ was correct to afford her opinion some weight. To the extent that

the ALJ afforded less or no weight to Ms. Davis's opinion that Plaintiff had "severe impairment

in work role function" because Ms. Davis's opinion was vague, the ALJ did not err. In

considering how much weight to give "other" medical source opinion evidence, the ALJ may consider, among other factors, "how well the source explains the opinion." SSR 06-03p. Ms. Davis's letter did not explain what "severe impairments in work role functions" Plaintiff would experience. Ms. Davis's failure to explain her opinion provided the ALJ a germane reason to discount that portion of Ms. Davis's opinion.

### 3.  Medical Opinions of Wendy Hitt and Andrew Buck

Wendy Hitt, PT, DPT was Plaintiff's physical therapist from May 2016. Thus, she is an "other" medical source. 20 C.F.R. § 416.902. In June 2016, Dr. Hitt submitted a letter explaining that Plaintiff's treatment had led to limited improvement and that Plaintiff continued to suffer "high pain" and "limited mobility." AR 336. Dr. Hitt opined that Plaintiff "is unable to sit or stand for greater than 10 min[utes] without moderate to severe pain, . . . is unable to lift [greater than] 10 pounds without severe pain," and is "unable to bend to the floor without pain." *Id.*

Andrew Buck, MA, QMHP was Plaintiff's therapist. Thus, he is an "other" medical source. 20 C.F.R. § 416.902. Mr. Buck submitted a letter explaining that Plaintiff "is unable to process and understand new information readily and when he becomes confused, he lacks the skills to problem solve in the moment." AR 335. Instead, Mr. Buck opined that Plaintiff's mental impairments rendered him suitable only for physical labor. As Mr. Buck noted, however, Plaintiff's physical impairments made Plaintiff ill-suited for physical labor. Mr. Buck opined that the "consequences of [Plaintiff's] ongoing symptoms interfere with his ability to adequately engage in day-to-day activities, including holding ongoing meaningful work." *Id.*

The ALJ's decision does not mention either Dr. Hitt's or Mr. Buck's opinions. As the Commissioner correctly concedes, the ALJ erred when she failed to discuss the letters from Dr. Hitt and Mr. Buck. The Commissioner argues, however, that the error was harmless because opinions from acceptable medical sources conflicted with Dr. Hitt's and Mr. Buck's letters.

An ALJ's erroneous rejection of testimony may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See Molina*, 674 F.3d at 1118-19. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Ultimately, harmless error review in the Social Security context adheres "to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

The ALJ's failure to consider Dr. Hitt's letter was not harmless. The ALJ credited the opinions of two reviewing state-agency physicians that conflicted with Dr. Hitt's opinion that Plaintiff can lift no more than 10 pounds. The state-agency physicians opined that Plaintiff can lift up to 25 pounds often and 50 pounds occasionally. AR 69, 89. An ALJ's failure to address the opinion of a competent other medical source is harmless "where the testimony is contradicted by *more reliable* medical evidence that the ALJ credited." *Molina*, 674 F.3d at 1118-19 (emphasis added).

Substantial evidence in the record does not show that the state-agency physicians are more reliable than Dr. Hitt. Although Dr. Hitt is an "other" medical source, the opinions of other medical sources are sometimes entitled to greater weight, especially an opinion of an "other" medical source who "has seen the [plaintiff] more often," has a particular specialty, or who provides a better explanation for her opinion. 20 C.F.R. § 416.927(f)(1). Dr. Hitt's opinion and

the state-agency physicians' opinion are from roughly the same time, summer 2016. Dr. Hitt, however, treated Plaintiff, seeing him regularly from May 10, 2016 to before Dr. Hitt's June 21, 2016 letter. AR 336. The state-agency physicians, meanwhile, were merely reviewing physicians. Although Dr. Hitt's letter is brief, she does explain her methodology for determining that Plaintiff can lift no more than 10 pounds. *Id.* Records of Dr. Hitt's treatment of Plaintiff supplement Dr. Hitt's letter. *See* AR 317-33. No such explanation exists for the state-agency physicians' opinion. Moreover, Dr. Hitt is not a typical "lay" witness like a friend or family member. She is a physical therapist and thus has specialized training and knowledge.

Again, an ALJ's error is harmless where the Court is assured, even if the ALJ had credited the ignored opinion, the ALJ would have reached the same conclusion. Because Dr. Hitt is an "other" medical source who treated Plaintiff and explained her opinion, the Court cannot confidently conclude that her opinion, had it been considered by the ALJ, would have been inconsequential to the disability determination. *See Molina*, 674 F.3d at 1115.

The ALJ's failure to consider Mr. Buck's opinion was not harmless either. The Commissioner argues that the ALJ credited testimony that conflicted with Mr. Buck's opinion when the ALJ credited Dr. Scott Alvord's opinion that Plaintiff had no problems comprehending simple instructions. The Court does not find any conflict. The ALJ did not specifically credit that opinion of Dr. Alvord. More importantly, however, Dr. Alvord's opinion that Plaintiff can comprehend simple instructs does not conflict with Mr. Buck's opinion that Plaintiff "is unable to process and understand *new* information readily." AR 335 (emphasis added). Indeed, Dr. Alvord's opinion that Plaintiff's limitations in "[r]espond[ing] appropriately to usual work situation and to *changes in routine* work setting" was "marked" appears at least consistent with Mr. Buck's opinion. AR 444 (emphasis added).

Nor can the Court confidently conclude that Mr. Buck's opinion, if credited, would not have changed the ALJ's disability determination. No other testimony credited by the ALJ conflicts with Mr. Buck's opinion. Dr. McConochie opined that Plaintiff had only moderate impairments, AR 272, but the ALJ believed that the evidence supported "*greater* social and *change* limits" than Dr. McConochie opined, AR 21. Both Plaintiff and Plaintiff's girlfriend reported that Plaintiff cannot understand new instructions. *See* AR 152 ("Learning disabilities makes it nearly impossible for [Plaintiff] to learn anything new."); AR 198 ("Learning disabilities also limit [Plaintiff's] ability to understand directions."); AR 200 (Plaintiff's girlfriend reporting that "[m]ost things are too complicated and it is easier" to not have Plaintiff attempt new tasks"). Finally, Mr. Buck, unlike Dr. McConochie and Dr. Alvord, treated rather than merely examined Plaintiff. On remand, the ALJ must consider and address the opinions of Mr. Buck and Dr. Hitt.

## B. Plaintiff's Subjective Symptom Testimony

### 1. Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's

location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2.  Plaintiff's Testimony Regarding his Limitations

Plaintiff submitted a written Function Report that his girlfriend completed on his behalf in March 2015. Plaintiff reported that he had a learning disability that "makes it nearly impossible for [him] to learn anything new." AR 152. Plaintiff indicated that he struggled with talking, memory, completing tasks, concentration, understanding, and following instructions. "Learning," Plaintiff reported, "has gotten harder and harder." AR 153. Because of his ADHD, Plaintiff must be reminded to "shower, brush teeth, wash hands," and take medicine. AR 154. Plaintiff reported that he could only follow directions that "are very simple and have no more than 3 steps." AR 157. Although Plaintiff plays video games daily, he often gets frustrated and angry with the games. Plaintiff cannot do the simple math necessary to manage his own finances.

Plaintiff also suffers from anxiety that makes it difficult for him to learn. Because "[a]uthority figures create high anxiety," Plaintiff struggles to learn new tasks from supervisors. AR 157. Plaintiff's anxiety also causes him to struggle to get along with others. The anxiety can turn into "panic attacks when supervisors are not satisfied with him," or can "caus[e] him to freeze up and panic when there are too many people around." AR 152. Plaintiff avoids crowds and only interacts with people he knows very well. Thus, while he communicates with friends on Facebook and spends time with close family members, he avoids interacting with new people, even new people in his community like neighbors or his girlfriend's classmates. Plaintiff's anxiety also affects his diet. Plaintiff "has very high anxiety when it comes to eating in front of others." AR 154. Finally, Plaintiff's anxiety causes him to struggle to adapt to change.

Finally, Plaintiff reported suffering back and joint pain resulting from a car accident and his past work as a firefighter. Plaintiff indicated he struggled with lifting. The pain "mak[es] manual labor impossible for him, and very painful." AR 152. The pain often keeps him awake at night. Plaintiff reported that he can walk up to five miles before needing a 15- to 30-minute rest. AR 157.

Plaintiff also testified at the hearing. Plaintiff described severe and worsening anxiety. He testified that he is claustrophobic and anxious in crowds. Because of this fear of crowds, Plaintiff only leaves the house to spend time with his daughter, take trash to the dump site, and to attend doctor's appointments. When asked what he does with his daughter, Plaintiff replied that he and his daughter "usually go out to ice cream or do something, like go out to dinner" but that he did not "even like to do that" because there are "[t]oo many people at the restaurant." AR 47.

Plaintiff also explained how his anxiety causes panic attacks that impair his ability to work. Interactions with supervisors or the perception that he is supposed to be completing tasks

more quickly cause the panic attacks. During these panic attacks, he "start[s] getting sick, . . . get[s] the sweats," and, eventually, shuts down or "just stop[s] listening." AR 46. These panic attacks also prevented him from obtaining a GED, despite seven years of trying. Every time a math "test came up," Plaintiff explained, he would "freak out because it, then you've got a time limit and you've got to look at it and go." AR 43. Plaintiff testified that he believed his anxiety is worse that it was before, and that now when anxious he just "shut[s] down." AR 44.

### 3. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 19. The ALJ rejected Plaintiff's testimony about the intensity, persistence, and limiting effects of Plaintiff's back pain because Plaintiff "has not sought the type of treatment one would expect if his low back symptoms were as limiting as he has alleged." *Id.* The ALJ also found that Plaintiff's treatment for his mental health impairments similarly failed to support his testimony about his mental health impairments. The ALJ further found that Plaintiff's "reported activities are inconsistent with a finding of disability." AR 21. Finally, the ALJ found that the objective medical evidence did not corroborate Plaintiff's symptom testimony. AR 19. The Court addresses each rationale in turn.

### a. Conservative Course of Treatment

The ALJ rejected Plaintiff's symptom testimony in part because the ALJ believed that Plaintiff's treatment was not commiserate with his alleged disabling limitations. Regarding his back pain, although Plaintiff "attend[ed] physical therapy and had one acupuncture session," the ALJ believed that Plaintiff should have also attempted "chiropractic [treatment], epidural steroid injections, or chronic pain management [treatment]." AR 19-20. As for Plaintiff's mental health

symptoms, the ALJ explained that "[w]hile the claimant has engaged in some counseling, it appears that most of the counseling was focused on applying for disability benefits, rather than improving his mental health symptoms." AR 20.

Routine, conservative treatment can be enough to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle*, 533 F.3d at 1162. The Ninth Circuit has cautioned, however, that "it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Plaintiff's treatment history is not a clear and convincing reason for rejecting his symptom testimony. First, the Court does not agree with the ALJ's characterization of Plaintiff's treatment as conservative. Plaintiff takes Meloxicam, Gabapentin, and Cyclobenzaprine for his pain. *See Van Buren v. Colvin*, 2013 WL 4782171, at *8 (D. Or. Sept. 5, 2013) (finding that the ALJ erred by concluding that Plaintiff was engaged in a conservative course of treatment where Plaintiff rejected physical therapy but was taking Vicodin, Hydrocodone, Diazepam, and Gabapentin). Similarly, plaintiff took Trazodone for his mental impairments and regularly attended counseling first with Mr. Buck and then Ms. Davis. *See Faber v. Berryhill*, 2018

WL 1517197, at *14 (S.D. Cal. March 27, 2018) ("[C]ourts have found that multiple years of talk therapy, prescription antidepressants and prescription antipsychotics are not properly characterized as conservative treatment.").

The ALJ believed that Plaintiff's mental health treatment was focused on obtaining disability benefits. Substantial evidence does not, however, support that conclusion. It is true that some of Plaintiff's visits with Mr. Buck involved Mr. Buck assisting Plaintiff with his Social Security claim. *See, e.g.*, AR 291 ("This had been a scheduled therapy session but [Plaintiff] brought in paper work Social [S]ecurity sent to him and requested [Buck] help him fill it out."); AR 293 ("[Buck] helped [Plaintiff] with his phone interview for [S]ocial [S]ecurity disability."). It was Mr. Buck, not Plaintiff, who recommended that Plaintiff's visits include case management services. *See* AR 312 (marking the checkboxes corresponding to both "Therapy" and "Case Management" under "Services Recommended by Therapist"). Plaintiff told Mr. Buck that his goal for therapy was to "[g]et all my anger and problems out instead of holding them inside," AR 304, and, at intake, Plaintiff requested only therapy services, AR 312 (declining to mark the checkbox corresponding to "Case Management" under "Services Requested by Client/Family"). Nor is there any evidence that Plaintiff saw Ms. Davis mainly to apply for disability benefits.

Second, no one prescribed Plaintiff more aggressive treatment. "ALJs must consider possible reasons for a claimant's failure to comply with or seek treatment consistent with his alleged symptoms." *Kyle P. v. Saul*, 2020 WL 3412197 2020, at *6 (D. Or. June 22, 2020) (quoting SSR 16-3p, 82 FR 49462, 49466-67 (Oct. 25, 2017)). The absence of a recommendation to pursue more aggressive treatment is a good reason for a plaintiff not to pursue more aggressive treatment. *See Alfredo C. v. Saul*, 2020 WL 836833, at *5 (D. Or. Feb. 20, 2020) ("The ALJ in this case does not cite any statement by a medical professional suggesting that

Plaintiff's course of treatment was conservative"); *Oliverio v. Colvin*, 2015 WL 1894299, at *6 (C.D. Cal. Apr. 27, 2015) ("The ALJ failed to articulate what, if any, other treatment was currently recommended or available for plaintiff's physical and mental impairments.").

Finally, the Court generally hesitates to rely on conservative treatment decisions to undermine the credibility of someone who, like Plaintiff, has a mental impairment. *See Regennitter*, 166 F.3d at 1299-1300.

### b. Activities of Daily Living

The ALJ also found that Plaintiff's activities of daily living were inconsistent with a finding of disability. The ALJ found that Plaintiff's report that he did household chores, mowed his lawn, and chopped wood was "inconsistent with his complaints of limiting back pain." AR 21. Similarly, the ALJ found that Plaintiff's ability to use social media, play video games, and spend time with family and pets was "not what one would expect from a disabled individual." *Id.*

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina*, 674 F.3d at 1112-13; *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities cannot discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly

incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th

Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be

'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th

Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations

to be relevant to his or her credibility and noting that "disability claimants should not be

penalized for attempting to lead normal lives in the face of their limitations.").

      The ALJ offered specific, clear and convincing reasons for rejecting Plaintiff's physical

symptom testimony but not Plaintiff's mental symptom testimony. Plaintiff's indication that he

chopped wood, mowed the lawn, and cared for animals is inconsistent with his complaints of

severe, constant, limiting back pain. *See Scholtisek v. Colvin*, 110 F. Supp. 3d 464, 479

(W.D.N.Y. 2015) ("The ability to chop wood contradicted Plaintiff's testimony that he could not

perform . . . manual labor."); *Harter v. Astrue*, 2010 WL 3938269, at *1 (D. Or. Oct. 1, 2010)

("[I]t was not unreasonable for the ALJ to determine that a person with sporadic disabling back

pain would avoid these activities [which included chopping wood, mowing the lawn, and caring

for farm animals] entirely.").

      The ALJ, however, improperly rejected Plaintiff's mental symptom testimony. First, the

ALJ did not explain which subjective mental health symptom testimony Plaintiff's activities

refuted. The ALJ explained that Plaintiff used social media, played video games, and spent time

with family and pets. The ALJ described what evidence suggests the complaints are not credible

but did not connect it to specific portions of Plaintiff's symptom testimony. That falls short of

the ALJ's duty to make more than "only general findings." *Dodrill*, 12 F.3d at 918. Even if it

were obvious which of Plaintiff's testimony the ALJ believed was refuted—and it is not

obvious—"a reviewing court . . . may not affirm the Commissioner on a ground upon which the Commissioner did not rely." *Bray*, 554 F.3d at 1226.

Second, the Court fails to understand how these activities are inconsistent with Plaintiff's testimony about his mental health symptoms. At the outset, "playing with dogs, and spending time with . . . nephews and family" is not inconsistent with disability. The regulations do require that Plaintiff eschew emotional connection with loved ones. *See Benecke*, 379 F.3d at 594 ("One does not need to be 'utterly incapacitated' in order to be disabled."). Nor is Plaintiff's ability to play video games inconsistent with his testimony. Plaintiff reported extreme anxiety when receiving instructions from supervisors and frustration leading him to shut down when he felt he was failing to properly follow those instructions. Plaintiff also reported, however, getting easily frustrated with video games. Moreover, Plaintiff can play video games alone and abandoned the games freely, and are thus free of triggers of which Plaintiff complains. The ALJ has not provided specific, clear and convincing reasons for rejecting Plaintiff's testimony about his mental health symptoms.

### c. Objective Medical Evidence

Finally, the ALJ found that Plaintiff's "symptoms are not entirely consistent with medical evidence." AR 19. An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony only because the objective medical record did not fully corroborate the testimony. *Robbins*, 466 F.3d at 883; *see also Reddick*, 157 F.3d at 722 ("Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence"); 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner will not "will not reject your statements about the intensity and persistence of your pain or other symptoms or

about the effect your symptoms have on your ability to work solely because the available

objective medical evidence does not substantiate your statements"). Again, it is "not sufficient

for the ALJ to make only general findings; he must state which pain testimony is not credible

and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918 (9th

Cir. 1993).

The ALJ's decision to reject Plaintiff's symptom testimony because it was unsupported

by the medical evidence was improper. First, the ALJ did not specify which of Plaintiff's

symptom testimony was unsupported by the medical evidence. This flouts the Ninth Circuit's

repeated admonition that an ALJ must specifically identify the testimony the ALJ is discounting.

*See, e.g.*, *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015); *Smolen*, 80 F.3d at 1284;

*Dodrill*, 12 F.3d at 918. The ALJ summarized physical and mental examinations of Plaintiff in

the medical record. *See* AR 19 (citing multiple records describing Plaintiff's medical records

related to Plaintiff's back pain); AR 20 (citing multiple records of tests of Plaintiff's intellectual

functioning and diagnoses of Plaintiff's PTSD, anxiety, and agoraphobia). The ALJ did not,

however link that medical evidence to any specific testimony. That was legal error. On remand,

the ALJ should specify which of Plaintiff's symptom testimony is unsupported by the objective

medical evidence.

The ALJ further erred by rejecting Plaintiff's mental health symptom testimony because

Plaintiff's testimony was unsupported by the medical record. An ALJ "may not discredit the

claimant's testimony as to the severity of symptoms merely because they are unsupported by

objective medical evidence." *Reddick*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ here did

exactly that, at least with regard to Plaintiff's mental health symptom testimony. The ALJ

acknowledged that Plaintiff's mental health impairments could be expected to cause the alleged

symptoms but rejected Plaintiff's testimony relating to her mental limitations because the medical record did not support Plaintiff's account of the severity of those symptoms. Because the ALJ offered no other valid reason for rejecting Plaintiff's testimony, his was legal error.

## C. Lay Witness Statements

Finally, the ALJ discounted the third-party function report that Plaintiff's girlfriend of 14 years, Miranda G.,[4] completed. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. Lay witness testimony about a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores

---

[4] To protect Plaintiff's privacy, the Court includes only the first name and first letter of the last name of Plaintiff's girlfriend. She is subsequently referred to only by her first name, Miranda.

*uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Miranda completed a Third-Party Function Report on April 18, 2016. Miranda wrote that Plaintiff had "[l]ittle to no comprehension skills," "[s]evere anxiety issues," PTSD, ADHD, and suffers "panic attacks when triggered." AR 198. Crowds provoke Plaintiff's anxiety. Plaintiff is especially anxious in places or around people with whom he is not familiar and does not feel comfortable unless Miranda is with him. Miranda also reported that Plaintiff had a learning disability. She indicated that Plaintiff struggled with "memory," "concentration," "understanding," "following instructions," and "completing tasks." AR 203. Plaintiff's learning disabilities cause Plaintiff to struggle with following directions. AR 198, 201. Plaintiff's learning disabilities also cause him to need supervision to complete nearly every task, including personal hygiene. "Most things," Miranda reports, "are too complicated [for Plaintiff] and it is easier [for Miranda] to just do it [her]self." AR 200.

As difficult as it is for Plaintiff to complete tasks under Miranda's supervision, Miranda reports that Plaintiff struggles more with others. "Authority figures," Miranda explains, "are a stress and anxiety trigger for [Plaintiff], he usually panics, sometimes to the point of tears." AR 203. In Plaintiff's previous job, Miranda explained, Plaintiff had multiple panic attacks because "others put stress on him to finish his tasks more quickly, shot staples at him and called him names," and his "[b]oss yelled at him." *Id.* Plaintiff quit the job after less than a week.

Finally, Miranda describes Plaintiff's physical abilities. Mirada notes that Plaintiff has difficulty "lifting," "squatting," "bending," "standing," "walking," and "stair climbing." AR 203.

According to Miranda, Plaintiff "can only lift 20 lbs or less before [being] in severe pain and [can] only walk a few blocks at a time." *Id.* After walking two or three blocks, Miranda reports, Plaintiff would need to rest for "10-15 minutes" before his "back stops throbbing." *Id.*

The ALJ "considered [Miranda]'s statements and [gave] them some weight to the extent that they are consistent with medical evidence" when completing Plaintiff's RFC assessment. AR 22. The ALJ improperly discounted Miranda's statements. The ALJ did not specify which medical evidence was *inconsistent* with Miranda's testimony. An ALJ may not "discredit . . . lay witness testimony [because it is] not supported by medical evidence in record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).

The Commissioner argues that the error is harmless because the ALJ rejected Plaintiff's symptom testimony and Miranda does not describe any limitations not already described by Plaintiff. The Commissioner is only partly correct. An ALJ's improper rejection of lay witness testimony is harmless where the ALJ's "well-supported reasons for rejecting the [plaintiff's] testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117. The ALJ, had well-supported reasons for rejecting Plaintiff's physical symptom testimony but not Plaintiff's mental health symptom testimony. Thus, the ALJ's decision to discount Miranda's statements about Plaintiff's physical limitations is harmless error. Because the ALJ did not offer well-supported reasons for rejecting Plaintiff's mental health symptom testimony, however, the ALJ's decision to discount Miranda's statements about Plaintiff's mental limitations is not harmless.

## D.  Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to

the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed reversible error by ignoring the opinions of Dr. Hitt and Mr. Buck, rejecting Plaintiff's subjective mental health symptom testimony, and rejecting Miranda's testimony about Plaintiff's mental health limitations. The Court does not, however, find that the record is free of all conflicts and ambiguities. The Court therefore declines to credit the erroneously rejected statements as true.

**CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND

REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge